IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAMAL EASTERLING,

                Petitioner,

         vs.

RICK HILL,[1] Warden, Folsom State Prison,

                Respondent.

No. 2:09-cv-01722-JKS

MEMORANDUM DECISION

Jamal Easterling, a state prisoner appearing *pro se*, filed a Petition for Habeas Corpus under 28 U.S.C. § 2254.  Easterling is currently in the custody of the California Department of Corrections and Rehabilitation, incarcerated at the Folsom State Prison.  Respondent has answered.  Easterling has not replied.

## I.  BACKGROUND/PRIOR PROCEEDING

Following a jury trial in November 2004 Easterling was convicted in the Solano County Superior Court of one count of one home invasion in concert with others (Cal. Penal Code §§ 212.5, 213(b)).  In a bifurcated trial, the trial court sitting without jury, found true allegations that Easterling had suffered a serious prior felony conviction (Cal. Penal Code § 667(a)(1)), two prior strike convictions (Cal. Penal Code § 667(b)(1)), and a prior prison term (Cal. Penal Code § 667.5(b)).  The trial court sentenced Easterling to an aggregate, indeterminate prison term of 30 years to life.  The California Court of Appeal affirmed Easterling's conviction and sentence in an

---

[1] Rick Hill, Warden, Folsom State Prison, is substituted for Larry Small, Warden, Calipatria State Prison.  Fed. R. Civ. P. 25(d).

unpublished decision,[2] and the California Supreme Court denied review on April 1, 2009. Easterling timely filed his Petition in this Court on June 17, 2009.

The factual basis underlying Easterling's conviction is well known to the parties and is not repeated here except to the extent necessary to understand this decision.

## II.  GROUNDS RAISED/DEFENSES

In his Petition, Easterling raises four grounds:  (1) the trial court improperly limited cross-examination of the prosecution's DNA expert; (2) the trial court improperly admitted evidence of Easterling's prior robbery conviction; (3) the trial court's questioning of a prosecution witness improperly vouched for the testimony of the witness; and (4) the prosecution improperly commented on Easterling's refusal to testify.  Respondent does not assert any affirmative defense.[3]

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[4]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the

---

[2] *People v. Easterling*, 2008 WL 5405050 (Cal. App. Dec. 30, 2008).

[3] *See* Rules—Section 2254 Cases, Rule 5(b).

[4] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

time of the relevant state-court decision."[5]  The holding must also be intended to be binding upon

the states; that is, the decision must be based upon constitutional grounds, not on the supervisory

power of the Supreme Court over federal courts.[6]  Thus, where holdings of the Supreme Court

regarding the issue presented on habeas review are lacking, "it cannot be said that the state court

'unreasonabl[y] appli[ed] clearly established Federal law.'"[7]  When a claim falls under the

"unreasonable application" prong, a state court's application of Supreme Court precedent must

be objectively unreasonable, not just incorrect or erroneous.[8]  The Supreme Court has made clear

that the objectively unreasonable standard is a substantially higher threshold than simply

believing that the state court determination was incorrect.[9]  "[A]bsent a specific constitutional

violation, federal habeas corpus review of trial error is limited to whether the error 'so infected

the trial with unfairness as to make the resulting conviction a denial of due process.'"[10]  In a

federal habeas proceeding, the standard under which this Court must assess the prejudicial

impact of constitutional error in a state-court criminal trial is whether the error had a substantial

---

[5] *Williams*, 529 U.S. at 412.

[6] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[7] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[8] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[9] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[10] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

and injurious effect or influence in determining the outcome.[11]  Because state-court judgments of

conviction and sentence carry a presumption of finality and legality, the petitioner has the burden

of showing by a preponderance of the evidence that he or she merits habeas relief.[12]

The Supreme Court recently underscored the magnitude of the deference required:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on
> federal court relitigation of claims already rejected in state proceedings.  *Cf.*
> *Felker v. Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996)
> (discussing AEDPA's "modified res judicata rule" under § 2244).  *It preserves*
> *authority to issue the writ in cases where there is no possibility fairminded jurists*
> *could disagree that the state court's decision conflicts with this Court's*
> *precedents.  It goes no farther.*  Section 2254(d) reflects the view that habeas
> corpus is a "guard against extreme malfunctions in the state criminal justice
> systems," not a substitute for ordinary error correction through appeal.  *Jackson v.*
> *Virginia,* 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens,
> J., concurring in judgment).  As a condition for obtaining habeas corpus from a
> federal court, a state prisoner must show that the state court's ruling on the claim
> being presented in federal court was so lacking in justification that there was an
> error well understood and comprehended in existing law beyond any possibility
> for fairminded disagreement.[13]

In applying this standard, this Court reviews the last reasoned decision by the state

court.[14]  State appellate court decisions that summarily affirm a lower court's opinion without

explanation are presumed to have adopted the reasoning of the lower court.[15]  This Court gives

---

[11] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[12] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[13] *Harrington v. Richter*, 562 U.S. ___, ___, 131 S. Ct. 770, 786-87 (emphasis added).

[14] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

[15] *Ylst*, 501 U.S. at 802-03.

the presumed decision of the state court the same AEDPA deference that it would give a

reasoned decision of the state court.[16]

IV.  DISCUSSION

Ground 1:  Limitation on Cross-examination

Easterling contends that the trial court improperly limited his right to cross-examine the

prosecution's DNA expert regarding the reliability of her lab work.  The facts underlying this

claim, as summarized by the California Court of Appeal, are:

> During his cross-examination of criminalist Melissa Wilhelm, who had
> prepared the samples for DNA testing, defense counsel asked whether, as part of
> being an accredited lab, "do you do anything to track your rate of error, if any?"
> Wilhelm asked, "Could you explain what you mean by 'tracking my rate of
> error'?"  Counsel then asked, "Well, do you, um, do you keep-well, as part of the
> proficiency, at any point, do you keep a running-well, have you ever made an error
> in the lab, as far as you know?"  The prosecutor objected on relevance grounds
> and the court sustained the objection.[17]

In rejecting Easterling's argument, the California Court of Appeal held:

> Relevant evidence is defined in Evidence Code section 210 as evidence
> "having any tendency in reason to prove or disprove any disputed fact that is of
> consequence to the determination of the action."  The trial court has broad
> discretion in determining the relevance of evidence.  (*People v. Scheid* (1997) 16
> Cal.4th 1, 13-14.)  The trial court does not abuse its discretion when it sustains an
> objection to a "broadly framed" question that might get an answer that goes
> beyond the scope of relevant evidence related to the material issues at trial.  (See
> *People v. Cash* (2002) 28 Cal.4th 703, 727.)
> In the present case, defense counsel's question to Wilhelm regarding
> whether she had "ever made an error in the lab" was extremely broad and went
> beyond not only the possibility of error in this case, but also went beyond any
> errors in DNA sample collection and processing to *any* possible lab-related error.
> Without anything linking the question to the DNA analysis in question, the court

---

[16] *Richter*, 562 U.S. at ___, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

[17] *Easterling*, 2008 WL 5405050 at *6.

did not abuse its discretion in sustaining the prosecutor's relevance objection. (See *People v. Cash, supra,* 28 Cal.4th at p. 727.)

In addition, [Easterling] is incorrect when he claims the trial court, in sustaining the prosecutor's objection, foreclosed further inquiry into Wilhelm's error rate in DNA sample collection and processing. It was counsel who moved on to a new line of questioning at that point, raising questions about the possibility of sample contamination or collection irregularities.FN4 Defense counsel also extensively questioned criminalist David Stockwell, who performed the actual testing on the samples, regarding possible sources of error and contamination.

> FN4. Indeed, the trial court overruled the prosecutor's relevance objection to counsel's question about how Wilhelm can determine who else, if anyone, might have access to sealed items submitted for testing.

In sum, the court's ruling was well within its discretion and did not preclude counsel from asking additional, more specific—and therefore relevant questions about Wilhelm's rate of error in DNA collection and processing. Accordingly, [Easterling's] claim that his Sixth Amendment right to confrontation was violated cannot succeed. (See *People v. Cudjo* (1993) 6 Cal.4th 585, 611; *People v. Greenberger* (1997) 58 Cal.App.4th 298, 349-350.) FN5

> FN5. This case is thus distinguishable from *Smith v. Illinois* (1968) 390 U.S. 129, 130-131 and *Alford v. United States* (1931) 282 U.S. 687, 692, cited by [Easterling], in each of which the United States Supreme Court held that the trial court's ruling amounted to a summary denial and effective emasculation of the defendant's right to cross-examination.[18]

It is clearly established Supreme Court law that the right of a criminal defendant to cross-examine witnesses against him is at the core of the Confrontation Clause of the Sixth Amendment.[19] This right is made applicable to the states by the Fourteenth Amendment.[20] That right is not, however, absolute, unfettered, and unrestricted. The right to cross-examination "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial

---

[18] *Id.* at *6-*7.

[19] *See Crawford v. Washington*, 541 U.S. 36, 50-59, 61, (2004); *Michigan v. Bryant*, 562 U.S. ___, ___, 131 S.Ct. 1143, 1149 (2011) (reaffirming that principal); *see also Davis v. Alaska*, 415 U.S. 308, 315-316 (1974) ("The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." (internal quotation marks and citation omitted)).

[20] *Pointer v. Texas*, 380 U.S. 400, 403 (1965).

process."[21]  "[T]he confrontation clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."[22]  "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."[23]  However, "[r]estrictions on a criminal defendant's rights to confront adverse witnesses . . . 'may not be arbitrary or disproportionate to the purposes they are designed to serve.'"[24]

In this case, as the California Court of Appeal noted, the question by Easterling's counsel was overly broad.  More importantly, as the California Court of Appeal also noted, Easterling's counsel voluntarily abandoned that line of questioning.  Nothing in the objection or the trial court's ruling could be construed, explicitly or implicitly, as foreclosing any further inquiry into the question of laboratory errors or errors by the witness.  Based on the record before it, this Court cannot say that the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an

---

[21] *Michigan v. Lucas*, 500 U.S. 145, 149 (1991) (internal quotation marks and citation omitted).

[22] *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam) (emphasis in the original).

[23] *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

[24] *Id.* (quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)).

unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[25]  Easterling is not entitled to relief under his first ground.

<u>Ground 2:  Admission of Evidence of Prior Robbery Conviction</u>

Easterling contends that the trial court improperly admitted evidence of a prior robbery by Easterling and his co-defendant to prove identity because the prior offense was not sufficiently similar to the charged offense.  The facts underlying this claim, as summarized by the California Court of Appeal, are:

> At a pretrial hearing, the trial court addressed the prosecution's motion to admit evidence of a prior robbery committed by [Easterling] and codefendant McDonald in 1993 in Napa to establish identity and intent.  Defense counsel opposed the motion.  The trial court ultimately found the prior robbery evidence admissible to show identity, but not to show intent.
>
> Following presentation of testimony regarding the prior robbery, the trial court instructed the jury that "that evidence, um, it has been admitted for a limited purpose.  [¶]  And it's not to be considered [by] you for any other purpose other than the limited purpose for which it's admitted.  Do not consider this evidence for any purpose other than the limited purpose.
>
> "And that purpose is: Evidence has been introduced for the purpose of showing that the defendants committed a crime other than that for which they are on trial.
>
> "This evidence, if believed, may not be considered by you to prove that a defendant is a person of bad character, or that he has a disposition to commit crimes.
>
> "It may be considered by you only for the limited purpose of determining if it tends to show the identity of the person who committed the crime, if any, for which the defendant is accused in this case.
>
> "For the limited purpose for which you may consider such evidence, you must weigh it in the same manner as you would all other evidence in this case.  You are not permitted to consider such evidence for any other purpose."[26]

In rejecting Easterling's argument, the California Court of Appeal held:

---

[25] 28 U.S.C. § 2254(d).

[26] *Easterling*, 2008 WL 5405050 at *7.

"Subdivision (a) of [Evidence Code] section 1101 prohibits admission of evidence of a person's character, including evidence of character in the form of specific instances of uncharged misconduct, to prove the conduct of that person on a specified occasion.  Subdivision (b) of section 1101 clarifies, however, that this rule does not prohibit admission of evidence of uncharged misconduct when such evidence is relevant to establish some fact other than the person's character or disposition."  (*People v. Ewoldt* (1994) 7 Cal.4th 380, 393.) FN6

> FN6.  Evidence Code section 1101 provides in relevant part: "(a) Except as provided in this section and in Sections 1102, 1103, 1108, and 1109, evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion.
>
> "(b) Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act."

"The greatest degree of similarity is required for evidence of uncharged misconduct to be relevant to prove identity.  For identity to be established, the uncharged misconduct and the charged offense must share common features that are sufficiently distinctive so as to support the inference that the same person committed both acts.  [Citation.]  'The pattern and characteristics of the crimes must be so unusual and distinctive as to be like a signature.'  [Citation.]"  (*People v. Ewoldt, supra,* 7 Cal.4th at p. 403.)

The admission of other-crimes evidence to prove identity is a matter within the sound discretion of the trial court.  (*People v. Haston* (1968) 69 Cal.2d 233, 246 (*Haston* ).)  "However, that discretion must in all cases be exercised within the context of the fundamental rule that relevant evidence whose probative value is outweighed by its prejudicial effect should not be admitted."  (*Ibid.;* see also Evid.Code, § 352.)

According to [Easterling], the common characteristics between the prior robbery and the present offense are not sufficiently distinctive to be admissible to prove identity in this case.  We disagree.

In *Haston, supra,* 69 Cal.2d 233, 238, the defendant was charged with committing three robberies together with another man, McDowell, who had pleaded guilty before trial.  The prosecution was permitted to introduce evidence at the defendant's trial, at which the primary issue was identity, that the two men had committed three prior robberies together several years earlier.  (*Id.* at pp. 238-240.)

The California Supreme Court examined the similarities that existed between the evidence related to the prior robberies and the charged offenses, including that all of the offenses were committed when the establishment in question was closed, but employees were still present; all were committed by two armed Caucasian men of middle height who wore handkerchiefs over their faces; the robbers entered each location through an employees' entrance and during the robberies forced one or more employees to lie face down on the floor; and one of the robbers seemed concerned with holding employees at bay, while the other was involved with obtaining money from the safe.  Also, in none of the robberies was an employee physically injured, though there was some jostling, pushing, or kicking.  (*Haston, supra,* 69 Cal.2d at p. 247.)  The court concluded that none of these similarities was sufficient to be admissible to prove identity, given that "each and all of the indicated marks are shared not only the charged and uncharged crimes herein involved, but also by very many armed robberies."  (*Id.* at p. 248.)

The court then stated, however, that there was another mark common to both the charged and uncharged offenses that had been accorded minimal significance by the parties:  "the very presence of Donald McDowell as one of the perpetrators of both the charged and uncharged offenses.  It is clear that McDowell's presence, unlike the other features common to the charged and uncharged offenses, is a mark whose distinctive nature tends to differentiate those offenses from other armed robberies.  There is only one Donald McDowell, and his conjunction with defendant in earlier robberies, together with his admitted participation in the robberies charged, supports the inference that defendant and not some other person was his accomplice in those charged offenses."  (*Haston, supra,* 69 Cal.2d at p. 249, fn. omitted.)  The court then concluded that, when added to the other similarities between the two sets of robberies, the significantly distinct mark of McDowell's presence had great probative value on the issue of identity, and the prior offense evidence was therefore admissible.  (*Id.* at p. 250.)

Similarly, in *People v. Cavanaugh* (1968) 69 Cal.2d 262, 273-274 (*Cavanaugh* ), our Supreme Court found that the several similarities between the charged and uncharged armed robberies, which would not be sufficiently distinctive on their own, were rendered extremely probative and therefore admissible by one "highly distinctive common mark, i.e., the presence of Joseph Ponte as defendant's confederate in the commission of both the charged and uncharged offenses."

Finally, in *People v. Robinson* (1995) 31 Cal.App.4th 494, 503 (*Robinson*), the trial court had admitted testimony, for the purpose of determining identity, that three nights before the arson with which the defendant and a codefendant were charged she saw the defendant and codefendant set fire to a parked car in front of the residence they burned three nights later.  The appellate court concluded that, while there was nothing particularly distinctive about either the charged arson or the prior arson, the trial court had properly admitted the prior offense evidence "because the two arsons shared 'a mark whose distinctive nature

tends to differentiate those offenses from other' arsons": i.e., the presence of the codefendant on both occasions. (*Ibid.,* quoting *Haston, supra,* 69 Cal.2d at p. 249.)

In the present case, both the charged offenses and the prior offense involved "take-over" robberies, in which three men wearing masks or other face coverings entered a building at night, ordered the occupants to lie on the ground at gunpoint, searched the building for money, and later discarded clothing and other items when confronted by police. Although these common characteristics alone would not be sufficiently distinctive to be admissible to prove identity, as in *Haston, Cavanaugh,* and *Robinson,* the fact of codefendant McDonald's presence at both robberies "is a mark whose distinctive nature tends to differentiate those offenses from other armed robberies." (*Haston, supra,* 69 Cal.2d at p. 249.)FN7

> FN7. That McDonald ultimately was not convicted of the present robbery does not affect our conclusion. As the Supreme Court explained in *Cavanaugh,* "the record contains ample affirmative evidence, in the form of eyewitness testimony, that [the codefendant] was defendant's confederate in both the charged and uncharged offenses. The People were not required, in prosecuting defendant, to prove [the codefendant] guilty beyond a reasonable doubt; it was enough to show the fact of his participation, like any other common mark, by a preponderance of the evidence. [Citation.]" (*Cavanaugh, supra,* 69 Cal.2d at pp. 273-274, fn. 9.) Here too, although McDonald was acquitted of the charged offenses, we have concluded that the evidence admitted at trial sustained the prosecution's burden for purposes of showing, by a preponderance of the evidence, that McDonald participated in the robbery.

This case is distinguishable from *People v. Felix* (1993) 14 Cal.App.4th 997 (*Felix* ), upon which [Easterling] relies. In *Felix,* the trial court admitted evidence that two codefendants in a robbery case had previously committed a robbery together for the purpose of establishing identity. (*Id.* at pp. 1002-1003.) Division Three of this District reversed the conviction, holding that the evidence should not have been admitted, explaining that "[t]he inference to be drawn, that because defendants previously knew each other they likely committed the charged crime together, was weak and remote." (*Id.* at p. 1006.)

In *Felix,* however, unlike the present case, the prosecutor had conceded that the earlier robbery "bore no distinctive marks in common" with the charged robbery, other than the association of the two defendants. (*Felix, supra,* 14 Cal.App.4th. at p. 1005.) Here, there are other similar characteristics from the prior robbery that are insufficiently distinctive on their own, but, as in *Haston,* "the addition of [McDonald's] presence-a significantly distinctive mark-into the combination yields a significantly different result. [¶] . . . It is clear that in this context the other-crimes evidence has great probative value on the issue of identity." (*Haston, supra,* 69 Cal.2d at p. 250.)

The trial court properly admitted evidence relating to the prior robbery.

Furthermore, any alleged error in admitting the prior offense evidence would have been harmless.  First, the verdicts in this case clearly demonstrate that the jury did not rely on the prior offense evidence to convict [Easterling].  That evidence was equally applicable to codefendant McDonald, who was not convicted on any of the robbery charges in this case.  Second, the evidence against appellant was extremely strong.  His DNA was found on the mask discarded outside the Aton home; Angela Aton identified him in a field show-up as one of the robbers, based on his clothing and build; and, at the time of his arrest, he was in possession of money taken from William Aton.  In light of this evidence, there is no reasonable likelihood that the result would have been different had the prior offense evidence been excluded.  (See *People v. Watson* (1956) 46 Cal.2d 818, 836.)[27]

The Supreme Court has acknowledged its "traditional reluctance to impose constitutional restraints on ordinary evidentiary rulings by state trial courts."[28]  "The introduction of unfairly prejudicial evidence against a defendant in a criminal trial . . . does not amount to a violation of due process unless the evidence is so extremely unfair that its admission violates fundamental conceptions of justice."[29]  "[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules."[30]  In criminal actions, "[t]he States are free to provide such procedures as they choose, including rules of evidence, provided that none of them infringes a guarantee in Federal Constitution."[31]  The Supreme Court has made clear that federal habeas power does not allow granting relief on the basis of a belief

---

[27] *Id.* at *7-*10.

[28] *Crane v. Kentucky*, 476 U.S. 683, 689 (1986).

[29] *Dunnigan v. Keane,* 137 F.3d 117, 125 (2d Cir. 1998).

[30] *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983)).

[31] *Burgett v. Texas*, 389 U.S. 109, 113-14 (1967).

that the state trial court incorrectly interpreted the state evidence code in ruling on the admissibility of evidence.[32]

Federal Rule of Evidence 404, as does its counterpart, California Evidence Code § 1101, generally prohibits the introduction of evidence of extrinsic acts that might adversely reflect on the actor's character, unless that evidence bears upon a relevant issue in the case, such as motive, opportunity, knowledge, or, as here, identity.[33]  No preliminary showing is necessary before such evidence may be introduced for a proper purpose.[34]  If offered for such a proper purpose, the evidence is subject only to general strictures limiting admissibility such as Rules 402 and 403.[35] There is a split among the circuit courts as to the proper standard of review, de novo or abuse of discretion, to be applied to the question of whether evidence falls within the scope of Rule 404(b).  The Ninth Circuit applies a de novo standard,[36] while the Second Circuit applies an abuse of discretion standard.[37]  California employs an abuse of discretion standard on appellate

---

[32] *Estelle*, 502 U.S. at 72 (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[33] This Court notes that, "[t]o the extent the Supreme Court has addressed the issue, it has expressly reserved consideration of whether the admission of prior bad acts under state law to show propensity constitutes a due process violation."  *Alberni v. McDaniel*, 458 F.3d 860, 864 (9th Cir. 2006) (citing *Estelle*, 502 U.S. at 75 n.5).

[34] *Huddleston v. United States*, 485 U.S. 681, 687-88 (1988).

[35] *Id.* at 688; *United States v. Curtin*, 489 F.3d 935, 944 (9th Cir. 2007) (noting that once it has been established that the evidence at issue serves an admissible purpose, such as establishing motive or intent, the only conditions justifying the exclusion of the evidence are those set forth in Rule 403).  Rule 402 "Relevant Evidence generally Admissible; Irrelevant Evidence Inadmissible";  Rule 403, "Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion or Waste of Time."

[36] *See United States v. Montgomery*, 384 F.3d 1050, 1061 (9th Cir. 2004).

[37] *United States v. Paulino*, 445 F.3d 211, 221 (2d Cir. 2006).

review of § 1101(b) rulings.[38]  The Supreme Court has held that in ruling on whether evidence is properly admitted under Rule 404(b) the court must consider whether:  (1) the prior acts evidence was offered for a proper purpose; (2) the evidence was relevant to a disputed issue; (3) the probative value of the prior act evidence substantially outweighed the danger of its unfair prejudice; and (4) the court, if requested, administered an appropriate limiting instruction.[39] Under California Evidence Code § 1102(b), as "circumstantial evidence, its admissibility depends upon three principal factors: (1) the materiality of the fact sought to be proved or disproved; (2) the tendency of the uncharged crime to prove or disprove the material fact; and (3) the existence of any rule or policy requiring the exclusion of relevant evidence."[40]

Easterling's entire argument on this ground is a disagreement with the California Court of Appeal's interpretation and application of California case law to the facts in this case.  That argument is not cognizable in a federal habeas proceeding.  "[The Supreme Court has] long recognized that a mere error of state law is not a denial of due process."[41]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due

---

[38] *People v. Daniels*, 802 P.2d 906, 924 (Cal. 1991); *see People v. Kipp*, 956 P.2d 1169, 1181 (Cal. 1998) (admissibility ruling under section 1101(b) is essentially a determination of relevance that is reviewed for abuse of discretion).  Given the split between the circuits and the fact that the Supreme Court has not expressly ruled on this question, it cannot be said that the use of an abuse of discretion standard is an unreasonable application of federal law as established by the Supreme Court.  *Kessee*, 574 F.3d at 679.

[39] *Huddleston*, 485 U.S. at 691-92.

[40] *People v. Thompson*, 611 P.2d 883, 888 (Cal. 1980) (citations omitted).

[41] *Swarthout v. Cooke*, 562 U.S. ___, ___, 131 S. Ct. 859, 863 (2011) (per curiam) (internal quotation marks and citations omitted).

14

process.'"[42]  "Federal courts hold no supervisory authority over state judicial proceedings and

may intervene only to correct wrongs of constitutional dimension."[43]  Furthermore, in this case,

the jury was instructed on the proper use of the prior conviction evidence.  This Court must

assume in the absence of evidence to the contrary that the jury followed those instructions.[44]

Based on the record before it, this Court cannot say that the decision of the state court

was "contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States" at the time the state court renders its

decision or "was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding."[45]  Easterling is not entitled to relief under his second

ground.

Ground 3:  Trial Court Questioning of Witness

Easterling argues that the trial court improperly vouched for the testimony of a

prosecution witness.  The facts underlying this claim, as summarized by the California Court of

Appeal, are:  "During the examination of prosecution witness Jason Jackson, the court asked the

---

[42] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[43] *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted); *see Wainwright v. Goode*, 464 U.S. 78, 86 (1983) (per curiam).

[44] *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *see also Richardson v. Marsh,* 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the law that jurors follow their instructions"); *Francis v. Franklin*, 471 U.S. 307, 324 n. 9 (1985) (noting that, except in the most extraordinary circumstances, the Supreme Court adheres to the crucial assumption that jurors carefully follow instructions).

[45] 28 U.S.C. § 2254(d).

witness three questions, including: '[Y]ou were 17 at the time, um, this robbery occurred?'

Jackson answered in the affirmative."[46]

In rejecting Easterling's argument, the Court of Appeal held:

> According to [Easterling], the court's question regarding prosecution witness Jason Jackson's age at the time "this robbery occurred" improperly "vouched for the testimony of the prosecution's witnesses by placing the power of the court behind their version of events" and "also violated [Easterling's] Sixth Amendment right to have a jury determine whether the prosecution had established all of the elements of the offense [i.e., robbery]." We disagree.
>
> First, the court was merely repeating the words the witness had used, without objection, in describing what had occurred. Second, and more importantly, it was undisputed that a home invasion robbery had occurred. The only question was the identity of the robbers. In fact, defense counsel began his closing argument with the following statement: "Like I told you when we started this case, you really only have to make one decision: There's these six counts up here, but what it really comes down to is, did the District Attorney prove that Mr. Easterling was involved in this home-invasion robbery?" Codefendant's counsel similarly asked the jury during his closing argument to think about "what was really said by the people that did rob that house[?]"
>
> Finally, the trial court instructed the jury: "Do not assume to be true any insinuation suggested by a question asked a witness. A question is not evidence and may be considered only as it helps you understand the answer." The court also told the jury: "I have not intended by anything I have said or done, or by any of the questions I may have asked, or by any of the rulings I may have made, to intimate or suggest what you should find to be the facts, or that I believe or disbelieve any witness. [¶] If anything I've done or said has seemed to so indicate, you will disregard it and form your own conclusion." We presume the jury followed the court's instructions.
>
> This case is far different from *People v. Cook* (1983) 33 Cal.3d 400, 404, a case cited by appellant, in which the jurors sent a note to the trial court during deliberations informing it that they were deadlocked, but asking for the court's opinion regarding the credibility of two witnesses. The court responded that it believed the prosecution had proven its case because it found the two witnesses in question to be credible. (*Id.* at pp. 404-405.) The appellate court reversed the judgment, given that the trial court had basically told the jury what verdict it should reach. (*Id.* at pp. 411-413.) In this case, on the other hand, the court's use

---

[46] *Easterling*, 2008 WL 5405050 at *10.

of the word "robbery" did not in any way inform the jury of the verdict the court believed it should return.[47]

Nothing in the question posed by the trial court in this case can possibly be construed as somehow vouching for the credibility of the witness or otherwise conveying to the jury that the court was of the opinion that Easterling was guilty of the home invasion burglary. That a home burglary had occurred was, as the California Court of Appeal noted, uncontested. Furthermore, the jury in this case was properly instructed concerning the consideration the jury was to give to any comments made, or questions asked, by the court. This Court must assume in the absence of evidence to the contrary that the jury followed those instructions.[48]

Based on the record before it, this Court cannot say that the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[49] Easterling is not entitled to relief under his third ground.

Ground 4:  Prosecution Comment on Easterling's Silence

No statement made by Easterling was introduced at trial, nor did Easterling testify. Easterling contends that the prosecutor improperly commented on his constitutional right to remain silent when the prosecutor elicited testimony from a police officer that Easterling was

---

[47] *Id.* at *10-*11.

[48] *See Weeks*, 528 U.S. at 234; *Richardson,* 481 U.S. at 206; *Francis*, 471 U.S. at 324 n.9.

[49] 28 U.S.C. § 2254(d).

taken to the police station so he could make a statement.  The facts underlying this claim, as

summarized by the California Court of Appeal, are:

> During trial, Officer Wardlow testified as follows regarding what he did
> after concluding a field show-up with [Easterling]:
> "Q.  After that was done, at some point, did you transport Mr. Easterling to
> somewhere?
> "A.  Yes, I did.  I transported him to the police station.
> "Q.  And at the police station, what's the purpose of transporting him
> there?
> "A.  So that he could be interviewed or spoken to, um, about the
> investigation."[50]

In rejecting Easterling's argument, the California Court of Appeal held:

> Appellant argues that Officer Wardlow's testimony gave the jury the
> impression that police had tried to question appellant, but that appellant had
> refused to make a statement, and that this was error under *Doyle v. Ohio* (1976)
> 426 U.S. 610 (*Doyle* ).FN8
>
> > FN8.  [Easterling] also cites *Griffin v. California* (1965) 380 U.S. 609 in
> > support of his claim.  However, since his claim relates to comment on a
> > defendant's refusal to speak to police upon request ("*Doyle* error"), rather
> > than the decision not to testify at trial, *Doyle,* not *Griffin v. California,* is
> > the relevant case.
>
> As a preliminary matter, respondent asserts that [Easterling] has forfeited
> any claim of error by failing to make a timely objection at trial.  (See *People v.
> Huggins* (2006) 38 Cal.4th 175, 198 [claim of *Doyle* error forfeited by failure to
> object].)  [Easterling] counters that a reviewing court possesses the discretion to
> excuse the failure to object in the trial court if it would be a miscarriage of justice
> to allow the conviction to stand.  (See *People v. Abbaszadeh* (2000) 106
> Cal.App.4th 642, 648.)  We conclude that appellant has not preserved this issue
> for appeal.  In the circumstances presented here, it would not result a miscarriage
> of justice to allow the conviction to stand.
>
> Indeed, we would find this claim to be completely without merit.  *Doyle*
> did not preclude the prosecution from introducing evidence that [Easterling] had
> been taken to the police station for questioning because appellant in fact waived
> his right to remain silent and gave a statement.  (See *Anderson v. Charles* (1980)
> 447 U.S. 404, 408 [*Doyle* does not apply to questions at trial about a defendant's
> post-arrest statements because "a defendant who voluntarily speaks after receiving
> *Miranda* warnings has not been induced to remain silent"].)  Defense counsel was

---

[50] *Easterling*, 2008 WL 5405050 at *11.

free to clarify any possible jury misperception as to whether appellant had given a statement on cross-examination, which in fact he did (although perhaps without realizing he was doing so) when Detective Sid DeJesus explained that he was familiar with [Easterling's] voice because he had interviewed [Easterling] in September 2003.  Defense counsel later made it even clearer that [Easterling] had made a statement after his arrest when, in closing argument, he stated: "Officer DeJesus says, 'I spoke to him maybe 45 minutes [*sic*] when I arrested him . . . .'" Thus, in light of this additional testimony and argument, the jury would not have been misled by Officer Wardlow's earlier testimony in any case.[51]

Initially, this Court notes that, because no objection was made a trial, Easterling procedurally defaulted on this claim in the state courts, which would ordinarily bar review by this Court in a federal habeas proceeding.[52]  Respondent has not, however, raised  procedural bar as an affirmative defense, therefore, it is deemed waived.[53]

It is well settled under *Doyle* that a prosecutor may not inquire on cross-examination of a criminal defendant as to the reason that the defendant failed to respond to postarrest questions posed by police after the defendant has received a *Miranda* warning.[54]  A *Doyle*-error is subject to a harmless error analysis, i.e., "had [a] substantial and injurious effect or influence in determining the jury's verdict."[55]  Nor does *Doyle* bar inquiry into statements made voluntarily after a defendant has received a *Miranda* warning.[56]

---

[51] *Id.*

[52] *Coleman v. Thompson,* 501 U.S. 722, 729 (1991); *see Collier v. Bayer,* 408 F.3d 1279, 1283 (9th Cir. 2005); *Melendez v. Pliler,* 288 F.3d 1120, 1124-25 (9th Cir. 2002).

[53] *Bennett v. Mueller*, 322 F.3d 573, 585 (9th Cir. 2003).

[54] *Doyle v. Ohio*, 426 U.S. 610, 611 (1976) (referring to the warning in *Miranda v. Arizona*, 384 U.S. 436, 467-73 (1966)).

[55] *Brecht*, 507 U.S. at 623 (internal quotation marks and citation omitted).

[56] *Anderson v. Charles*, 447 U.S. 404, 408 (1980).

Although the Supreme Court has not extended the *Doyle* rule to situations, such as in this case, in which the question regarding the defendant's silence during police interrogation is posed to a police officer, not the defendant himself, the Ninth Circuit has.[57]  In the context of questions posed by the prosecution to police investigators, the Ninth Circuit employs a three-part test:  "[1] the extent of the comments by the witness; [2] whether an inference of guilt from silence was stressed to the jury; and [3] the extent of other evidence suggesting defendant's guilt."[58]

In this case, Easterling waived his *Miranda* rights and voluntarily gave a statement to the police.  Because neither the question nor the answer imply that Easterling remained silent in the response to a question (no question was posed to Easterling), it cannot logically be construed to infer guilt from Easterling's silence.  The comment solely concerned the purpose for which Easterling was transported to the police station.  Most tellingly, however, is that Easterling makes no showing whatsoever that the prosecutor, directly or indirectly by inference, suggested that the jury infer guilt from Easterling's silence.

Based on the record before it, this Court cannot say that the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence

---

[57] *United States v. Hernandez*, 476 F.3d 791, 796-97 (9th Cir. 2007).  Because only Supreme Court law is binding on the states, circuit precedent remains relevant only to the extent that it is persuasive authority in determining whether a state court decision is objectively unreasonable.  *Hines v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).

[58] *Hernandez*, 476 F.3d at 797 (internal quotation marks and citations omitted).

presented in the State court proceeding."[59]  Easterling is not entitled to relief under his fourth ground.

## V.  CONCLUSION AND ORDER

Easterling is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[60]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[61]

The Clerk of the Court is to enter judgment accordingly.

Dated:  August 25, 2011.

                                                        /s/ James K. Singleton, Jr.
                                                  JAMES K. SINGLETON, JR.
                                                  United States District Judge

---

[59] 28 U.S.C. § 2254(d).

[60] 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705-06 (2004) ("to obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's  resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'") (quoting *Miller-El*, 537 U.S. at 327).

[61] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.